## McFARLAND v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. October 16, 1896.)

MASTER AND SERVANT—DEFECTIVE APPLIANCES.

The evidence does not clearly indicate that the defects complained of were the cause of the injury received where it shows that plaintiff's hand was crushed by deadblocks while he was by daylight coupling a car to a slowly-backing train; that one deadblock was perceptibly lower than the

other because twisted, yet presenting a resisting surface as a bumper; and that deadblocks vary in size and thickness. Goodrich v. Railroad Co., 22 N. E. 397, 116 N. Y. 398, distinguished.

Appeal from trial term, Cayuga county.

Action by Peter McFarland against the New York Central & Hudson River Railroad Company for damages for personal injuries. From an order denying a motion for a new trial, where plaintiff recovered a verdict of $5,000, defendant appeals. Reversed.

On the 26th of April, 1893, and for some time prior thereto, the plaintiff was in the employ of the defendant as brakeman, and he alleges that, while he was so employed on that day, he was directed by the defendant's officers to connect a car then standing upon defendant's tracks at Red Creek, N. Y., with the train of cars on which plaintiff was acting as brakeman. He alleges that the car was improperly constructed, and had been allowed to become and be in a dangerous and unsafe condition; that one of the bumpers of the car had become loose, and twisted from its natural and proper position, so that a person could not safely and securely go or be between that car and another car for the purpose of coupling the same; that the car had remained in the possession of the defendant for several days; that the defendant knew of the defective condition, and gave the plaintiff no notice thereof; and that the plaintiff had no knowledge of such defect. It is also alleged that the car had not been carefully inspected when it was tendered to the defendant by a connecting road; that the defendant negligently and carelessly allowed the car, in such improper and unsafe condition, to be used upon its tracks; that, while the plaintiff was engaged in coupling the car to a train, his left hand was caught and crushed between the cars, and his hand rendered useless, and that the same had to be amputated. The plaintiff alleges that the injury was received without any negligence on his part, and that there was no want of care on his part which contributed to the accident. The answer admits that the plaintiff was in the employ of the defendant as brakeman at the time mentioned, and that he sustained some of the injuries mentioned in the complaint. The answer alleges that the injuries were sustained by reason of the plaintiff's negligence in not observing the precautions necessary and usual in the work in which he was engaged. The answer also alleges that any defects that existed in the drawheads or apparatus for coupling the cars were open, plain, and visible defects, and that the plaintiff was negligent, and that such negligence contributed to and was the cause of his injuries. At the close of the plaintiff's evidence the defendant moved for a nonsuit on the ground that the plaintiff had failed to show negligence on the part of the defendant contributing to the accident, and also upon the ground that the plaintiff had failed to show a lack of contributory negligence, and also upon the ground that whatever danger there was from the condition of the car he assumed as one of the risks of his employment. The motion was denied, and the defendant took an exception. At the close of the whole evidence the motion for a nonsuit was renewed, upon the same grounds as before mentioned, and was denied, and the defendant took an exception.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Harris & Harris, for appellant.
Rich & Aiken, for respondent.

HARDIN, P. J.     Plaintiff attempted to couple car No. 7,609 of the Pittsburgh, Ft. Wayne & Chicago Company with car No. 5,388 of the Syracuse, Binghamton & New York Company. Before the evidence closed it appeared that car No. 5,388 was in a proper condition, and in response to a request of the defendant the court charged "that the defendant is not chargeable with negligence or

responsibility in this case, because of any defect in the car 5,388, the Binghamton car." When that request was made the plaintiff assented to it, and the court thereupon added: "There is no claim on the part of the plaintiff that there was an injury caused by any defect in that car." The plaintiff's sole reliance, therefore, before the jury, was upon the alleged defect as to car 7,609. In response to a request made by the defendant's counsel, the court charged "that the jury must find, before the plaintiff can recover, that the plaintiff's hand was caught solely because the buffer was in the position in which it was, and must further find that his hand would not have been caught had the buffer been in its normal position." It appeared that the bumpers on car No. 7,609 were 12 inches long and 8 inches up and down. Some evidence, however, was given upon the trial indicating a lesser size of the bumpers. Evidence was given tending to show that the bumper on car No. 7,609 was twisted and hanging several inches; and it is insisted on behalf of the plaintiff that there is no evidence to indicate that any other bumper is put upon a car not parallel with the sill, and that the brakeman was accustomed to bumpers thus placed, varying in size. It is also insisted in behalf of the plaintiff that, as he had coupled the other end of car No. 7,609, he had a right to expect the same kind of bumper at the end where he received the injuries, and that the evidence indicated that it was necessary to guide the link with his hand, and that the bumper of No. 7,609 was in an improper condition, and that if it had not been twisted there would have been a space of some four inches wide for his hand.

According to the testimony of the plaintiff he placed his left hand on the southeast corner of No. 7,609, and with his other hand reached over to put the pin into the hole of the drawbar, having adjusted the pin in the top of the hole so that it leaned back and was in a proper position to receive the link of No. 5,388 as it should enter the slit in the drawbar. He turned and placed his right hand on the southwest corner of No. 5,388, and, taking the link which was in the drawbar of that car in his left hand, guided it into the slit of the drawbar of No. 7,609, watching his hand, and watching the approaching drawbar, so as to properly make the coupling, and, after he had so guided the link, he let go of it, and undertook to remove his left hand, but the deadblocks came together, and his hand was caught between them. After the accident he discovered that the deadblocks, or bumper, on the east end of the car No. 7,609 was out of position,—that the same was not lengthwise of the sill, but it was in a diamond shape, so that one of its corners pointed towards the track. He also testified that the bolt which ran through the deadblock on the end of the sill was a little bent, and that the deadblock projected out four inches, so that it hung down four or five inches closer to the other bumper on the other car. He also testified that he did not see this deadblock until his hand was caught. He further testified that he did not see the drawhead of No. 7,609 until it was about a foot and a half from his hand. The witness Lester testifies somewhat differently in respect to the circumstances attending the accident, and he says that the cars came back

slowly, and the twisted deadblock was plain to be seen.    There was some evidence given tending to show that the deadblock had been in a diamond shape for nine days preceding the accident.    There was an end sill or heavy timber running across the end of the car, projecting beyond the face of the car about 10 inches.    Under this end sill was the drawbar, which projected from beneath the body of the car, and parallel with the track.    To the end of the sill, on each side of the drawbar, are the deadblocks or bumpers.    They are not uniform in size.    The witness Hartigan, who was a draughtsman, and who saw car No. 7,609, and was called in behalf of the defendant, gave a description of the structure of the car, and he said that the deadblock is even with the drawbar, and he added:

"The inside edge of the deadblock on 7,609 is even with the outer edge of the drawbar. The distance from the bottom of the deadblock to the bottom of the sill, when the bottom of the deadblock is parallel with the track, is 2¼ inches. When the deadblock is turned in diamond shape, so that the point is nearest the track, the lower part of it is just at the bottom of the sill. It does not project below the bottom of the sill. The face of the deadblock is 12 inches, measuring parallel with the end sill. At right angles with that it is 7½ inches. The deadblock on 7,609 projects beyond the end sill 5½ inches. The distance from the bottom of the end sill to the top of the rail is 34¾ inches. The center of the drawbar is 4 inches below the bottom of the end sill, and the bottom would be 8 inches below. * * * The drawbar is entirely under the body of the car, and below the end sill, excepting the face. The face projects above the bottom of the end sill about 1 inch."

It was claimed by the plaintiff that the deadblock in question hung out, and he testified that the bolt which held it to the end sill was slightly bent, and that it stuck out about 4 inches, and that, as a consequence, the effect of that was to bring it that much closer to the other car.    The witness Kosboth stated that it hung out an inch and a half.

It is apparent from the evidence that deadblocks vary in size and in thickness.    An examination of the evidence does not leave the impression upon our minds that it warranted the jury in finding "that the plaintiff's hand was caught solely because the buffer was in the position in which it was," and that his hand "would not have been caught had the buffer been in its normal position."    Our attention is called to Goodrich v. Railroad Co., 116 N. Y. 398, 22 N. E. 397.    We think the case differs quite essentially from the one in hand.    In that case the evidence was very clear that, if the bumper had been in order, the accident would not have happened, and that the defective bumper was the proximate cause of the accident.    In that case the bumper of the moving car was defective, and hung lower than it should have done, and it passed under the bumper of the stationary car, and permitted the deadwoods to come together; and upon that state of facts it was said that the defect in the bumper was the proximate cause of the accident.    "The immediate effect was to permit the deadwoods of the two cars to come together, and the plaintiff was, from that cause, exposed to a danger not within the ordinary risks of his employment."    In that case it appeared very clearly that "the bumper of the moving car passed under the bumper of the stationary car, and, in attempting to withdraw his hand, it was caught between the deadwoods and severely crushed."

The bumper of the moving car hung so much lower than the one on the stationary car, and lower than it was intended to hang, for the reason that the staple or strap that surrounded it, in which it played, was broken on one side.

In referring to the Goodrich Case in Arnold v. Canal Co., 125 N. Y. 17, 25 N. E. 1064, Judge Finch says:

"In that case the cars were being coupled for the purpose of proceeding on their journey. The plaintiff was required, in the nighttime, and with the aid of a lantern, to make the coupling, and found a broken drawhead, in seeking to use which his arm was crushed between the deadwoods."

We are of the opinion that the evidence did not clearly indicate that the defects complained of were the proximate cause of the injuries received by the plaintiff. Upon that subject the evidence should be clear and persuasive, so that the jury should not be allowed or required to speculate as to the proximate cause of the injuries complained of. The conclusion already reached renders it unnecessary to consider some other grounds urged upon us in behalf of the appellant.

Order reversed, and a new trial ordered, with costs to abide the event. All concur.